Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| MAYRA APONTE GARCIA Recurrida v. SAMUEL FUENTES MIRANDA Peticionario | KLCE202400147 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Aibonito Caso Núm. AI2020CV00335 Sobre: Liquidación de Comunidad de Bienes |
|---|---|---|

Panel integrado por su presidente el Juez Bermúdez Torres, el Juez Adames Soto y la Juez Aldebol Mora

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 19 de marzo de 2024.

I.

El 9 de noviembre de 2020, la Sra. Mayra Aponte García presentó *Demanda* sobre liquidación de comunidad de bienes contra el Sr. Samuel Fuentes Miranda. Alegó que había convivido consensualmente y en público concubinato con el señor Fuentes Miranda, por un término aproximado de treinta y cuatro (34) años. Añadió, que durante la vigencia de la convivencia consensual adquirieron bienes y deudas que pertenecían a la comunidad de bienes construida por ambos. En su *Demanda*, la señora Aponte García presentó un inventario con los bienes que alegaba pertenecían a la comunidad de bienes y de los cuales le correspondía un cincuenta (50) porciento. Entre ellos se encontraban: tres (3) cuentas bancarias, diez (10) vehículos de motor, nueve (9) bienes inmuebles, joyería, bienes muebles, un *jet sky* y **catorce (14) anualidades de un Premio de Lotería, valoradas en trece (13) millones**. Finalmente, solicitó al tribunal que la nombrara administradora de los bienes y se realizara el inventario y las

operaciones de avalúo, tasación y división de la comunidad de bienes. Esta *Demanda* fue enmendada en varias ocasiones, siendo la última el 22 de julio de 2021, mediante *Tercera Demanda Enmendada.*

Luego de un extenso trámite procesal, el 17 de octubre de 2023, el señor Fuentes Miranda presentó *Contestación a Tercera Demanda Enmendada.* Negó que se hubieran adquirido bienes o deudas pertenecientes a una comunidad de bienes. Añadió, que entre él y la señora Aponte García no existía una comunidad de bienes por pacto implícito, ya que dicho pacto era nulo por falta de consentimiento, pues al momento de comenzar la relación eran menores de edad. En síntesis, alegó que los bienes en controversia, incluyendo el boleto de lotería, le pertenecía exclusivamente a él y que nunca hubo un acuerdo de que estos pertenecieran a una comunidad de bienes.

Concluido el término de descubrimiento de prueba el 16 de octubre de 2023, el 26 de octubre de 2023 el señor Fuentes Miranda presentó *Solicitud de Sentencia Sumaria.* Expuso, nuevamente, que no existía una comunidad de bienes entre las partes y que la evidencia respaldaba la afirmación de que no se había configurado ningún pacto, ni expreso ni implícito que estableciera la misma, por lo que la señora Aponte García no tenía derecho a los bienes alegados. Añadió, que las partes eran menores de edad por lo que no podían llegar a un pacto de crear una comunidad de bienes. El 5 de diciembre de 2023, la señora Aponte García presentó *Moción en Oposición a Solicitud de Sentencia Sumaria.*

El 2 de enero de 2024, el Tribunal de Primera Instancia emitió *Resolución* declarando No Ha Lugar la *Solicitud de Sentencia Sumaria.* Concluyó que, se trataba de un caso, el cual versaba únicamente en la credibilidad que el juzgador le pueda merecer al testimonio de las partes que está en controversia. En su *Resolución,*

el Foro primario estableció los siguientes hechos como no controvertidos:

1. Las partes demandante y demandado convivieron en público concubinato desde el 21 de diciembre de 1985.

2. Las partes demandante y demandado convivieron en público concubinato por un periodo aproximado de 35 años.

3. Las partes demandante y demandado convivieron en público concubinato en Aibonito, Puerto Rico.

4. Durante la relación, procrearon tres (3) hijas cuyos nombres son Gisela, Mayra Enid y Yesenia todas de apellido[s] Fuentes Aponte y mayores de edad. La primera nació en 1987, la segunda en 1988 y la última en 1991.

5. La relación entre Mayra Aponte y Samuel Fuentes comenzó cuando ambos eran menores de edad, ella tenía 15 años y él 18 años.

6. Las partes demandante y demandada no otorgaron convenio expreso sobre las normas o acuerdos que regirían los asuntos económicos entre ellos.

7. Durante los años de convivencia las partes demandante y demandada adquirieron bienes y deudas.

8. El 23 de mayo de 2009, se otorgó escritura de compraventa número 72 ante el notario José Ángel Santini Bonilla donde Samuel Fuentes y Mayra Aponte adquirieron la propiedad sita en la calle Primitivo Santiago número 100 en Aibonito por el precio de $73,000.00.

9. Las partes demandante y demandada tomaron un préstamo en la Cooperativa de Aibonito para la compra de la propiedad antes mencionada por $85,000 el 3 de mayo de 2009 donde compareció ella como deudora y él como garantizador.

10. Las partes demandante y demandada el 23 de mayo de 2009 otorgaron pagaré a favor de la Cooperativa de Ahorro y Crédito San José por la suma de $85,000 vencedero el 1 de junio de 2039.

11. El sorteo de la Lotería Electrónica del 17 de enero de 2014 tenía un premio de $23,000,000.00.

12. El billete ganador de la Lotería Electrónica fue jugado en el Maestro Liquor Store por Samuel Fuentes García y contenía 5 jugadas con revancha. La combinación ganadora estaba en el inciso (D) del boleto con los números: 08, 27, 32, 34, 44, 46.

13. Según carta fechada el 21 de enero de 2014 del Secretario Auxiliar del Negociado de las Loterías, Samuel Fuentes Miranda seleccionó recibir el premio en anualidades de $1,150,000.00 a deducirse la cantidad de $230,000.00 por concepto de las contribuciones para el pago neto de $920,000.00 a ser pagado anualmente por 19 años.

14. Las partes demandante y demandado poseen cuenta bancaria número 3107258484 en el Banco Santander.

15. Las partes demandante y demandada adquirieron mediante escritura número 2 sobre segregación y compraventa otorgada el 6 de febrero de 2014 ante el notario Pedro Vélez Vargas a razón del 50% cada uno el solar 22 de la calle 4 en la Urbanización Colinas del Paraíso en el Barrio Llanos en Aibonito.

16. Las partes demandante y demandada otorgaron escritura número 35 sobre compraventa ante el notario Pablo Manuel Cruz Mercado donde vendieron el solar 22 de la calle 4 en la Urbanización Colinas del Paraíso en el Barrio Llanos en Aibonito por el precio de $135,981.00 a su hija Yesenia Fuentes Aponte.

17. El 12 de abril de 2014 se otorgó escritura número 56 sobre compraventa ante el notario Valenry J. Rivera Santiago donde tanto la parte demandante y demandada adquirieron en un 50% cada uno el solar número 2 del Bloque A en la Urbanización Praderas de Aibonito por el precio de $75,000.

18. Las partes demandante y demandada tomaron un préstamo en la HUD para la compra de la propiedad en Reina de las Flores por $226,000.00 el 29 de septiembre de 2014 donde compareció él como deudor y ella como codeudora.

19. AJF Corp. representada por su presidente Samuel Fuentes Miranda adquirió mediante escritura de compraventa número 9 otorgada el 13 de febrero de 2015 ante el notario Pablo Manuel Cruz Mercado predio de terreno radicado en el Barrio Pasto en Aibonito con una cabida superficial de 1,721.51 metros cuadrados.

20. Samuel Fuentes Miranda adquirió mediante escritura número 12 de compraventa otorgada el 13 de marzo de 2015 ante el notario Eddie G. Malavé Colón solar compuesto de 88 metros cuadrados en la calle San José en Aibonito por el precio de $61,000.00.

21. Según certificación expedida por la Cooperativa de Ahorro y Crédito Aiboniteña las personas autorizadas en la cuenta de AJF Corp. del 4 de diciembre de 2015

al 3 de octubre de 2021 eran Samuel Fuentes Miranda, Mayra Enid Fuentes Aponte y Mayra Aponte García. A partir del 4 de octubre de 2021 hubo cambio de firmas quedando como persona autorizada Gisela Fuentes Aponte.

22. Mediante escritura número 1 sobre Permuta por Acciones del 10 de enero de 2018 ante el notario Iván Alonso Costa, Samuel Fuentes Miranda cedió a SM House Rental, Inc. representada por Mayra Aponte García la propiedad compuesta de 88 metros cuadrados en la Calle San José en Aibonito por 860 acciones comunes del capital corporativo.

23. Mediante escritura número 23 ante la notaria Dilianette Santini Rivera otorgada el 11 de mayo de 2018 sobre dación en pago Samuel Fuentes Miranda recibió predio de terreno localizado en el barrio Pasto en Aibonito compuesto de 0.1272 cuerdas.

24. Mayra Aponte García radicó planilla sobre ingresos para el año contributivo 2019.

25. Mediante escritura número 12 ante la notaria Dilianette Santini Rivera otorgada el 1 de julio de 2020 sobre compraventa Samuel Fuentes Miranda adquirió predio de terreno de forma rectangular sito en el barrio Pastos en Aibonito con cabida superficial de 0.3667 cuerdas por el precio de $40,000.00.

26. Mediante escritura número 25 el 31 de agosto de 2020 ante la notaria Dilianette Santini Rivera las partes demandante y demandada cancelaron hipoteca constituida a favor de la Cooperativa de Ahorro y Crédito Aiboniteña por la suma principal de $226,000.00 que garantizaba la propiedad radicada en el barrio Pasto en Aibonito. Dicha propiedad fue adquirida mediante compraventa en virtud de escritura número 39 otorgada el 30 de septiembre de 2014 ante el notario Pedro R. López de Victoria Gómez por el precio de $219,400.00 y en proporción de 50% cada uno.

27. Samuel Fuentes Miranda posee cuenta bancaria número 000029507 en BoniCoop (Cooperativa de Ahorro y Crédito Aiboniteña).

28. Emmanuel Rivera Rivera nació el 19 de noviembre de 1986 y falleció el 20 de marzo de 2011.

Por otro lado, estableció que existía controversia en cuanto a: (1) si se llevaron a cabo los acuerdos implícitos; (2) qué comprendieron esos acuerdos y; (3) la intención de las partes. Añadió, que estas controversias serán presentadas ante el Foro

primario mediante evidencia testifical y que será dicho foro quien adjudicará la credibilidad correspondiente, dado a que por haber controversias de hecho y de derecho, no podía ser desestimado el caso por virtud de sentencia sumaria.

El 15 de enero de 2024, el señor Fuentes Miranda presentó *Solicitud de Reconsideración de Resolución y Solicitud de Determinación de Hechos Adicionales*. El 16 de enero de 2024, notificada 19, el Foro primario emitió *Orden* negándose a reconsiderar. Aún insatisfecho, el 6 de febrero de 2024, el señor Fuentes Miranda acudió ante nos mediante *Recurso de Certiorari*. Sostiene:

**PRIMER ERROR:**
Erró el Honorable Tribunal de Primera Instancia, al encontrar como controvertidos hechos materiales propuestos por la peticionaria, a pesar de que la parte recurrida descansó solamente en las aseveraciones o negociaciones contenidas en sus alegaciones y mociones sin contestar en la forma tan detallada y específica, como lo exige la Regla 36.3 de Procedimiento Civil.

**SEGUNDO ERROR:**
Erró el Honorable Tribunal de Primera Instancia, al no dictar Sentencia Sumaria a favor de la Peticionaria, a pesar de que una vez concluido el descubrimiento de prueba, la prueba descubierta no satisface los elementos necesarios para establecer su causa de acción para la creación de una comunidad de bienes romana sobre un boleto de lotería premiado y demás bienes.

**TERCER ERROR:**
Erró el Honorable Tribunal de Primera Instancia, al no resolver que no es posible la creación de una comunidad de bienes de índole germánica por medio de un alegado pacto que carece de objeto, consentimiento y causa, dado que el pacto implícito no tiene el alcance de crear una comunidad universal sobre todos los bienes, presentes y futuros adquiridos por dos personas solteras menores de edad.

**CUARTO ERROR:**
Erró el Tribunal de Primera Instancia, al no resolver que es nulo y contrario a la ley, la moral y al orden público cualquier alegado pacto de índole patrimonial realizado entre dos menores de edad.

**QUINTO ERROR:**
Erró el Honorable Tribunal de Primera Instancia, al no excluir de los bienes alegados las cosas pertenecientes a terceras personas que no son parte de este pleito.

**SEXTO ERROR:**
Erró el Tribunal de Primera Instancia, al no dictaminar que para probar la existencia de una comunidad de bienes es requisito que se cumpla con el estándar de prueba clara, robusta y convincente.

El 8 de febrero de 2024 emitimos *Resolución* concediéndole a la señora Aponte García término de diez (10) días para expresarse sobre el recurso incoado. Posteriormente, el 16 de febrero de 2024, la señora Aponte García presentó *Solicitud de Prórroga* para presentar su alegación responsiva debido a la extenso del recurso presentado. El 20 de febrero de 2024, emitimos *Resolución* concediendo dicha prórroga. En cumplimiento, el 5 de marzo de 2024 la señora Aponte García presentó *Escrito en Cumplimiento de Orden Mostrando Causa por la cual no se Debería Expedir el Auto de Certiorari y por la cual no se debe Revocar la Resolución Recurrida.* En su escrito, la señora Aponte García reiteró sus planteamientos presentados en la *Tercera Demanda Enmendada*, además solicitó que no se expidiera el auto de *certiorari.* Alegó que la existencia o no existencia de una comunidad de bienes era un hecho que no podía adjudicarse sumariamente.

El 8 de marzo de 2024, el señor Fuentes Miranda presentó *Solicitud de Vista Oral al Amparo de la Regla 80 del Reglamento del Tribunal de Apelaciones.* Argumentó, que consideráramos celebrar una vista oral por tratarse de un caso que cuestiona la aplicabilidad de la figura del pacto implícito en contextos donde están involucrados asuntos aleatorios, como lo es un premio de lotería. Añadió, que debido a la creciente cantidad de relaciones concubinarias en nuestra sociedad, este caso es uno de alto interés público y que el resultado de este podría crear un precedente

importante. El 8 de febrero de 2024, este Panel decidió no conceder, en esta etapa, la vista oral solicitada.

II.

Como es sabido, el auto de C*ertiorari* es un remedio procesal utilizado para que un tribunal de mayor jerarquía pueda corregir un error cometido por un tribunal inferior. Sin embargo, distinto a los recursos de apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de C*ertiorari* de manera discrecional[1].

La Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.40, dispone los criterios a tomar en consideración al determinar si procede la expedición de un auto de *Certiorari.* Dispone:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden para mostrar causa:
>
> A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se encuentra el caso es la más propicia para su consideración.
>
> F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

---

[1] *Negrón* v. *Srio. de Justicia,* 154 DPR 79, págs. 90-91 (2001).

Ninguno de los criterios antes expuestos en la precitada Regla 40, es determinante, por sí solo, para este ejercicio de jurisdicción, y no constituye una lista exhaustiva.[2] Por lo que, los criterios antes transcritos nos sirven de guía para poder, de manera sabia y prudente, tomar la determinación de si procede o no intervenir en el caso en la etapa del procedimiento en que se encuentra el caso.[3]

Como foro apelativo intermedio debemos abstenernos de intervenir con los dictámenes interlocutorios que emita el foro de instancia durante el transcurso de un juicio, a menos que se demuestre claro abuso de discreción o arbitrariedad.[4] Por imperativo de la naturaleza extraordinaria y discrecional del auto de *certiorari*, debemos determinar si el ejercicio de nuestra facultad revisora es oportuno y adecuado. Su propósito es que corrijamos errores cometidos por un tribunal de menor jerarquía no sin antes determinar si por vía de excepción, procede que expidamos o no el auto solicitado.[5]

El Tribunal de Instancia incurre en abuso de discreción cuando: "la decisión que emite no toma en cuenta e ignora, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando por el contrario el juez, sin justificación y fundamento alguno para ello, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en el mismo; o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez livianamente sopesa y calibra los mismos".[6]

---

[2] H. Sánchez Martínez, *Derecho Procesal Apelativo*, Hato Rey, Lexis-Nexis de Puerto Rico, 2001, pág. 560. Véase, además: *García* v. *Padró*, 165 DPR 324, 335 esc. 15.
[3] *Torres Martínez* v. *Torres Ghigliotty*, 175 DPR 83, 97 (2008).
[4] *García* v. *Asociación*, 165 DPR 311, 322 (2005); *Meléndez* v. *Caribbean Int'l News*, 151 DPR 649, 664 (2000).
[5] *García*, 165 DPR, pág. 335; *Negrón* v. *Srio. de Justicia*, 154 DPR 79, 93 (2001).
[6] *Pueblo* v. *Ortega Santiago*, 125 DPR 203, 211-212 (1990).

### III.

En esencia, el señor Fuentes Miranda nos solicita que revoquemos la *Resolución* emitida por el Tribunal de Primera Instancia mediante la cual declaró No Ha Lugar la *Solicitud de Sentencia Sumaria* presentada por este y no desestimó la *Demanda* presentada. No obstante, de la *Resolución* recurrida, surge que el Foro primario examinó el expediente, consideró las alegaciones de las partes, aplicó adecuadamente las doctrinas relevantes y determinó que, por existir hechos en controversia, no estaba en posición de desestimar por virtud de sentencia sumaria. Entendió, en su discreción judicial, que el caso debía continuar los procedimientos con la celebración del juicio a su fondo por este versar en asuntos de credibilidad, los cuales deben ser evaluados por el Foro primario. No encontramos que, con su proceder, dicho foro haya incurrido en abuso de discreción. Procede, por tanto, *denegar* la expedición del presente recurso.

Lo anterior no es óbice para que, ante la final adjudicación que del caso haga el Foro de Instancia, la parte afectada acuda en su revisión al foro correspondiente mediante el procedimiento dispuesto por ley.[7]

### IV.

Por los fundamentos antes expresados, *denegamos* la expedición del Auto de *Certiorari* solicitado. El juez Bermúdez Torres, aunque está conforme con el curso decisorio arribado, considera hubiese sido en extremo útil la celebración de la vista oral solicitada. Estamos ante un caso nobel y de alto interés público, que requiere evaluar, como cuestión de derecho, la aplicabilidad de la figura del pacto implícito entre concubinos y la adjudicación de gananciabilidad o no, de premios aleatorios como el de lotería.

---

[7] *García* v. *Asociación*, 165 DPR 311, 336 (2005).

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones